**Haile Abadi NAIZGI, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 05–1368.

United States Court of Appeals, Fourth Circuit.

Argued May 22, 2006.

Decided July 31, 2006.

**ARGUED:** Catherine A. Reynolds, Law Office of David Garfield, Washington, D.C., for Petitioner. R. Joseph Sher, Assistant United States Attorney, Office of the United States Attorney, Alexandria, Virginia, for Respondent. **ON BRIEF:** Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Respondent.

Before WILLIAMS and GREGORY, Circuit Judges, and HENRY F. FLOYD, United States District Judge for the District of South Carolina, sitting by designation.

Petition for review denied in part and granted in part; vacated in part and remanded by published opinion. Judge GREGORY wrote the opinion, in which Judge WILLIAMS and Judge FLOYD joined.

## OPINION

GREGORY, Circuit Judge:

Haile Abadi Naizgi ("Naizgi"), an Ethiopian citizen of Eritrean ethnicity, petitions for review of the final decision of the

Board of Immigration Appeals ("BIA") denying him asylum. For the following reasons, we deny in part and grant in part his petition for review and remand for further proceedings.

## I.

### A.

In May 1998, a border dispute between Ethiopia and its former province, Eritrea, escalated into armed conflict. Citing "national security grounds," the Ethiopian government, controlled by the Ethiopian People's Revolutionary Democratic Front ("EPRDF"), began to arrest and deport Ethiopians of Eritrean origin without due process. J.A. 163. Naizgi and his family, who are ethnically Eritrean, quickly fell victim to this campaign. In June, EPRDF agents arrested the Eritrean owner of the company where Naizgi worked and closed down the business. Later that month, authorities arrived at Naizgi's Addis Ababa home, where he lived with his father, stepmother, and two younger stepsisters. The EPRDF agents arrested Naizgi's father for deportation to Eritrea and warned Naizgi's stepmother, who was pregnant, that they would soon return for her and the rest of the family. To escape detention and expulsion, Naizgi's stepmother was able to use a passport and visa that she had in her possession to flee with Naizgi's youngest stepsister to the United States. However, Naizgi and his other stepsister stayed behind and went into hiding, leaving most of the family's possessions and documents in their home. When EPRDF agents returned and found the family gone, they seized the house and sealed the door.

After several months, Naizgi's remaining stepsister was able to obtain an exit visa, and she, too, left Ethiopia, ultimately traveling to the United States. In July 1999, Naizgi's deported father was also able to travel to the United States, and the family reunited in Colorado. All were the beneficiaries of a grant of asylum in this country. Naizgi himself remained in hiding in Ethiopia until May 2000, when he fled across the border to Kenya. Naizgi sought asylum there, but his application and appeal were ultimately denied. Fearing what might happen if he returned to Ethiopia, Naizgi purchased a South African passport and traveled to the United States in the spring of 2002, where he was apprehended after crossing the border from Mexico.

In the course of removal proceedings thereafter, Naizgi conceded removability and sought asylum, withholding of removal, and protection under the United Nations Convention Against Torture. For his asylum claim, Naizgi asserted that he had a well-founded fear of persecution on account of his Eritrean ethnicity. In support of his claims, Naizgi and his father testified regarding the family's experiences in Ethiopia at a hearing before an immigration judge ("IJ"). In response, the Immigration and Naturalization Service (the "Service")[1] submitted the U.S. Department of State Country Report on Ethiopia's human rights practices for 2001, as well as the United Kingdom Assessment of Country Conditions for Ethiopia, dated October 2002. These documents indicated that the armed conflict between Ethiopia and Eritrea ended in 2000, and that the Ethiopian government reportedly no longer detained and deported Ethiopians of

---

1. During the pendency of these proceedings, the functions of the Immigration and Naturalization Service were transferred to and reorganized under the Department of Homeland Security. For the sake of clarity, we will refer to the Service rather than its successor entity.

Eritrean origin. However, the reports also showed that the EPRDF remained in power and that individuals of Eritrean origin continued to face restrictions on their right to return to the country; were not allowed to register to vote; and were subject to harassment, discrimination in access to social services, and other ill-treatment from officials.

## B.

Section 1158 of Title 8 provides that the Secretary of Homeland Security and the Attorney General have discretion to grant asylum to any alien who is a "refugee." 8 U.S.C. § 1158(b). A "refugee" is an alien unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

Applicants bear the burden of proving eligibility for asylum. 8 C.F.R. § 1208.13(a). To meet their burden, applicants may show that they have a well-founded fear of future persecution, or that they suffered past persecution. *Id.* § 1208.13(b). Applicants who demonstrate past persecution are presumed to have a well-founded fear of future persecution. *Id.* § 1208.13(b)(1). This presumption can be rebutted only if the IJ finds by a preponderance of the evidence that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution" or that the applicant could avoid future persecution by relocating to a different region of that country and it would be reasonable to expect the applicant to do so. *Id.* § 1208.13(b)(1)(i). The Service bears the burden of proof for rebutting the presumption. *Id.* § 1208.13(b)(1)(ii).

Importantly, even if the Service meets its burden to establish that a victim of past persecution does not have a well-founded fear of future persecution, the applicant may still be eligible for asylum on "humanitarian" grounds. *See id.* § 1208.13(b)(1)(iii). *See also Ngarurih v. Ashcroft*, 371 F.3d 182, 189 (4th Cir.2004) (describing asylum granted under this regulation as "humanitarian asylum"). Under 8 C.F.R. § 1208.13(b)(1)(iii), the IJ may still exercise her discretion to grant asylum if "[t]he applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution;" or "[t]he applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country." *Id.*

In this case, the IJ rendered an oral decision granting Naizgi asylum, but denying him withholding of removal and relief under the Convention Against Torture. The IJ found that the evidence established that Naizgi had been the victim of past persecution on account of his ethnicity. However, the IJ ultimately premised her discretionary grant of asylum on humanitarian grounds. The IJ summarized:

> The Court finds on this record that the respondent was a victim of past persecution and that he no longer has a well-founded fear of future persecution based on the information in this record, but for humanitarian grounds, based on the severity of the past persecution, the Court finds that in the exercise of discretion the application for asylum should be granted.

J.A. 228. In discussing the continued viability of Naizgi's well-founded fear of persecution and his eligibility for humanitarian asylum, the IJ explained her decision as follows:

The information on country conditions shows that the war is over. Now we do not know what would happen to the respondent if he were able to enter Ethiopia today. It is possible that he would be able to reenter and get a job and gain access to the family property. So it is a close question on whether his fear is objectively reasonable. I would not find on this record that he has any fear of being deported. At a minimum, I am willing to conclude based on the information in the record that it would be uncomfortable for him as an ethnic Eritrean to have to live in Ethiopia. But as I indicated, I am granting this on discretionary grounds because the respondent's entire family has been displaced. They have been deprived of their livelihood. They have been deprived unfairly of their property and I would note that an additional discretionary factor relates to the fact that the respondent's immediate family members are the beneficiaries or recipients of asylum either directly or derivatively.

J.A. 229–30.

The Service appealed the grant of asylum to the BIA. The BIA sustained the appeal and ordered Naizgi's removal, reasoning that Naizgi was not eligible for humanitarian asylum. In so doing, the BIA did not disturb the IJ's finding of past persecution and indicated that it "[found] no error in the Immigration Judge's conclusion that, at the time of the hearing in January 2003, the respondent no longer had a well-founded fear of persecution in Ethiopia on account of his Eritrean ancestry ...." J.A. 304. This petition for review followed.

## II.

For purposes of our review, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We must uphold the BIA's determination that Naizgi is ineligible for asylum unless that determination is "manifestly contrary to the law and an abuse of discretion." *Id.* § 1252(b)(4)(D); *Ngarurih v. Ashcroft*, 371 F.3d 182, 188 (4th Cir.2004).

## A.

We begin by addressing whether the BIA erred in determining that Naizgi was ineligible for humanitarian asylum. In this case, the IJ had premised her grant of asylum upon the persecution Naizgi and his family endured when the government's actions resulted in the entire family's expatriation and loss of their livelihoods and property. This past persecution, the IJ concluded, was so severe as to qualify Naizgi for a grant of humanitarian asylum. *See* 8 C.F.R. § 1208.13(b)(1)(iii)(A) (providing that an alien is eligible for asylum if he has "demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution"). The BIA disagreed with this finding, reasoning that although the past persecution Naizgi and his family suffered was "deplorable," it did not reach the level of severity for which the humanitarian asylum regulation was designed. J.A. 304.

Under our precedent, "[e]ligibility for asylum based on severity of persecution alone is reserved for the *most atrocious abuse*." *Gonahasa v. INS*, 181 F.3d 538, 544 (4th Cir.1999) (emphasis added). We have limited the humanitarian asylum exception to " 'the rare case where past persecution is so severe that it would be inhumane to return the alien even in the absence of any risk of future persecution.' " *Id.* (quoting *Vaduva v. INS*, 131 F.3d 689, 690 (7th Cir.1997)).

Our decisions have been true to this narrow construction. For example, in *Ngarurih*, we held that the petitioner could not establish past persecution severe enough to warrant relief under 8 C.F.R. § 1208.13(b)(1)(iii) where, because of his political activities, the petitioner had been interrogated under threat of execution; held for a week in a dark cement cell that officials flooded with cold water at irregular intervals; and imprisoned for several months in solitary confinement. 371 F.3d at 185. Likewise, in *Rusu v. INS*, 296 F.3d 316 (4th Cir.2002), we concluded that the past persecution the petitioner suffered was "not of the scale warranting a grant of asylum" where that persecution involved interrogation, assault, and torture, including the removal of his teeth with pliers and a screwdriver. *Id.* at 325.

Under this precedent, the BIA's decision that Naizgi was ineligible for humanitarian asylum was not manifestly contrary to law or an abuse of discretion. Without question, the Ethiopian government's treatment of Naizgi and his family is both troubling and deplorable. However, the BIA permissibly concluded that the past persecution established on this record was not "the most atrocious abuse." *See Gonahasa*, 181 F.3d at 544. Accordingly, we deny the petition for review with respect to this aspect of the BIA's ruling.

### B.

■ Having dispensed with the availability of humanitarian asylum for Naizgi, we must next review whether the BIA properly ordered his removal. As noted above, the BIA left intact the IJ's finding that Naizgi suffered past persecution, entitling him to a presumption of a well-founded fear of future persecution. Therefore, Naizgi is removable only if the Service successfully rebutted this presumption by a preponderance of the evidence. *See* 8

C.F.R. § 1208.13(b)(1). Naizgi argues that the IJ never, in fact, found that changed circumstances overcame his presumption of a well-founded fear. He therefore argues that the BIA should have remanded his case for such a determination to be made.

Turning first to the IJ's opinion, close examination reveals that the IJ indeed left open the question of whether changed circumstances rebutted Naizgi's presumption. Despite initially suggesting that Naizgi no longer had a well-founded fear of future persecution, the IJ's substantive analysis bespeaks a lack of decision on this issue. The IJ stated:

> The information on country conditions shows that the war is over. Now *we do not know* what would happen to the respondent if he were able to enter Ethiopia today. It is *possible* that he would be able to reenter and get a job and gain access to the family property. *So it is a close question on whether his fear is objectively reasonable.* I would not find on this record that he has any fear of being deported. *At a minimum,* I am willing to conclude based on the information in the record that it would be uncomfortable for him as an ethnic Eritrean to have to live in Ethiopia. But as I indicated, I am granting this on discretionary grounds because the respondent's entire family has been displaced.

J.A. 229–30 (emphases added). This discussion lacks factual findings, made by a preponderance of the evidence, that rebut Naizgi's presumption of a well-founded fear of future persecution. Essentially, rather than decide what the IJ believed was a "close question," the IJ elided over a final conclusion on this issue because she had decided to grant Naizgi humanitarian

asylum regardless of whether his well-founded fear persisted.[2]

The BIA decision did nothing to remedy this gap in the IJ's asylum analysis. Rather, the BIA opinion makes clear that it mistakenly understood the IJ to have made a finding that changed circumstances overcame Naizgi's presumption of a well-founded fear of persecution: *"we find no error* in the *Immigration Judge's conclusion* that, at the time of the hearing in January 2003, [Naizgi] no longer had a well-founded fear of persecution in Ethiopia on account of his Eritrean ancestry ...."* J.A. 304 (emphases added). As a result, the BIA reviewed the IJ's purported finding for clear error, but did not, as the parties have sometimes suggested, make its own finding that the presumption had been overcome. *See* 8 C.F.R. § 1003.1(d)(3)(i) (For the BIA's review, "[f]acts determined by the immigration judge ... shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous.").[3]

The consequence of the IJ's incomplete analysis and the BIA's mistaken understanding thereof is that the question of whether changed circumstances rebutted Naizgi's presumption of a well-founded fear was never decided below. As a court of appeals, it is not our place to settle this factual question here. Accordingly, we must grant Naizgi's petition for review in this respect and remand for this issue to be resolved in the first instance. *See INS v. Ventura,* 537 U.S. 12, 16–17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (requiring remand where the BIA had not yet ad-

---

**2.** We note that at oral argument, counsel for the Attorney General agreed that this was an appropriate reading of the IJ's opinion.

**3.** For this reason, we reject Naizgi's challenge that the BIA engaged in impermissible factfinding. *See* 8 C.F.R. § 1003.1(d)(3)(iv) ("Ex-

dressed an issue relevant to the petitioner's claim for asylum).

### III.

For the foregoing reasons, we deny the petition for review with respect to Naizgi's arguments for humanitarian asylum. However, we grant his petition for review with respect to his well-founded fear of persecution. We therefore vacate that portion of the BIA's order and remand for further proceedings consistent with this opinion.

*PETITION FOR REVIEW DENIED IN PART AND GRANTED IN PART; VACATED IN PART AND REMANDED*

cept for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals.").