**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1666**

HALIT MUDA,

                    Petitioner,

          v.

ERIC H. HOLDER, JR., Attorney General,

                    Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted:  November 3, 2009        Decided:  November 18, 2009

Before MOTZ and SHEDD, Circuit Judges, and Jane R. ROTH, Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation.

Petition for review granted; vacated and remanded by unpublished per curiam opinion.

Andrew P. Johnson, LAW OFFICES OF ANDREW P. JOHNSON, New York, New York, for Petitioner.  Gregory G. Katsas, Assistant Attorney General, Civil Division, William C. Peachey, Assistant Director, Office of Immigration Litigation, Ada E. Bosque, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Halit Muda ("Muda") seeks review of orders of an Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") that he failed to provide sufficient corroborating evidence supporting his claims for asylum and withholding of removal. We cannot, on the basis of the IJ and BIA's incomplete analysis, conclude that substantial evidence supports their holdings. Therefore, we grant Muda's petition for review, vacate the order of removal and remand for further proceedings.

I.

Soon after leaving his home country of Albania for the United States in May 2005, Muda applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").[1] Muda maintains that he suffered persecution in Albania and harbors a well-founded fear of future persecution should he be sent back. This persecution allegedly arises from (1) his and his father's membership in Albania's Democratic Party ("DP"), and (2) his family's efforts to regain property confiscated by Albania's socialist government.

---

[1] Muda did not appeal the IJ's denial of his CAT claim; this precludes our review of the claim. See Massis v. Mukasey, 549 F.3d 631, 638 (4th Cir. 2008).

2

At his immigration hearing, Muda testified that he joined the DP in 2000 and participated in many of its protests and rallies. Because of these activities, the police beat, detained, or threatened him on several occasions. After a rally in 2003, in which Muda criticized a leader of the Socialist Party, relatives of that leader beat Muda "very badly" and threatened that, if he did not end his criticism, Muda would "end up dead." That same year, the socialist mayor of Muda's hometown, against whom Muda's father had recently campaigned, told Muda's father that he would "continue to exercise persecution against him." Soon after, police searched Muda's home "without giving . . . the reason" and "made [the family] feel very intimidated."

Muda also testified that he and his family suffered persecution as a result of their efforts to regain confiscated property. In December 2004, Muda signed a petition in support of "Property with Justice," an organization devoted to solving Albania's land confiscation problems. The signers of the petition received threats, "but nothing was done" by police. After his father filed a lawsuit to regain the property, a group tied to the local socialist government kidnapped and beat his father, threatening that if he continued to demand the land, "he would die." Similar groups targeted Muda on two occasions, surrounding him in the street, holding him at gunpoint, and

3

threatening him with death.  In April 2005, one month before fleeing to the United States, Muda "received the worst beating [of his] life" at the hands of such a group, who held a knife to his throat and beat him for ten minutes, resulting in facial "cuts and lacerations" and "marks and wounds all over [his] body."  After Muda left Albania, members of the group visited his home, asked his mother and aunt about his whereabouts, and broke his aunt's knee when they learned he had left Albania. The family repeatedly, but unsuccessfully, sought help from police, who said more evidence was needed to pursue any action.

In an oral opinion issued the same day as the hearing, the IJ denied Muda's application.  Although she concluded that Muda was "credible" and "provided detailed testimony . . . largely consistent with his prior statements," she held that Muda failed to meet his burden of proof for asylum under 8 U.S.C. § 1158(b)(1)(B)(ii) (2006) of the Immigration and Nationality Act ("INA") because he failed to provide certain corroborating evidence.  Specifically, the IJ observed that Muda offered "no letter from anyone else who signed the petition or received threats," no letter from his mother or aunt regarding the ongoing threat to Muda in Albania, "very limited corroboration concerning the efforts made by [Muda] and his family to assert

4

their property rights," and "a lack of corroboration on the failure of the police or government to protect [Muda]."[2]

Due to the missing evidence, and despite substantial documentary evidence submitted by Muda,[3] the IJ determined that she could not assess "whether or not th[e April 2005 death threat] . . . is part of a pattern that supports a well-founded fear of future persecution," whether the land dispute "represents a protected ground" under the INA, or "whether the police response was legitimate under the circumstances." Because Muda failed to meet the burden of proof for asylum, he failed to meet the higher burden for withholding of removal.

---

[2] When questioned, Muda testified that he did not submit letters from the other petition-signers because he feared that such letters would place them in danger. As to the lack of letters from his aunt and mother, Muda testified that he asked for a letter only from "the head of the household, just my dad." The IJ did not address these explanations or make a ruling on the availability of the evidence.

[3] Muda submitted a letter from his father stating that socialists "threatened [Muda's] life and beat him severely on several occasions"; notarized certifications from the Albanian government stating that the socialists confiscated his family's land and persecuted his family; notarized certifications confirming Muda's membership in "Property with Justice" and the DP; a notarized certification from the doctor who treated Muda after his April 2005 beating; a statement from Muda's friend stating that "property disputes . . . ma[de] impossible Halit's stay in Albania"; and a 2005 U.S. State Department country report finding no evidence that the Albanian government had resolved any of the complaints it received that year regarding compensation for confiscated property.

Through a single member, the BIA denied Muda's appeal, affirming the IJ's ruling and concluding that Muda had failed to show that the missing evidence was "reasonably unavailable" to him. Muda timely petitioned this court for review.

## II.

Under the INA, "[a]pplicants bear the burden of proving eligibility for asylum." Naizgi v. Gonzales, 455 F.3d 484, 486 (4th Cir. 2006). To meet this burden, an applicant must prove that he is a "refugee," defined as one "unable or unwilling to return to . . . [his] country because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1258(a) (2006). If the applicant establishes past persecution, a well-founded fear of future persecution is presumed. 8 C.F.R. § 208.13(b)(1) (2009). "Persecution involves the infliction or threat of death, torture, or injury to one's person or freedom, on account of one of the enumerated grounds in the refugee definition." Qiao Hua Li v. Gonzales, 405 F.3d 171, 177 (4th Cir. 2005).

The REAL ID Act of 2005, which amended the INA, applies to Muda's application. See Pub. L. No. 109-13, § 101(h)(2), 119 Stat. 231, 305 (2005). Under these amendments, an applicant's

6

testimony alone may sustain his burden of proof if the IJ finds such testimony credible, persuasive, and specific. 8 U.S.C. § 1158(b)(1)(B)(ii). However, even if the IJ finds the testimony credible, she may require the applicant to provide additional corroborating evidence "unless the applicant does not have the evidence and cannot reasonably obtain the evidence." Id.

Because "[t]he substantial evidence test applies[,] . . . a reviewing court must accept the IJ's determinations with respect to the . . . availability of corroborating evidence[] and the effect of non-production unless the record compels a contrary conclusion." Chhay v. Mukasey, 540 F.3d 1, 6 (1st Cir. 2008). Thus, a reviewing court must uphold an agency decision "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (2006).

"Because the BIA affirmed the IJ's order and supplemented it, . . . both decisions are subject to judicial review." Niang v. Gonzales, 492 F.3d 505, 511 n.8 (4th Cir. 2007).

III.

Muda contends that substantial evidence does not support the conclusion that he failed to meet his burden of proof because the IJ and BIA failed to give proper weight to his significant corroborating evidence. Unfortunately, because the IJ and BIA failed to analyze, or even mention, past persecution

7

in Albania -- and thus failed to analyze how the missing evidence affected Muda's ability to demonstrate past persecution -- we cannot determine whether substantial evidence supports the denial of relief.[4]

In SEC v. Chenery Corp., 318 U.S. 80, 95 (1943), the Supreme Court held that "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." The Court later elucidated "an important corollary" to this rule: "If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable." SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).

Under the Chenery rules, we cannot affirm the agency's finding of no past persecution when it failed to make such a finding. See Cao He Lin v. DOJ, 428 F.3d 391, 400 (2d Cir. 2005) ("To assume a hypothetical basis for the IJ's determination, even one based in the record, would usurp her role."); cf. Tewabe v. Gonzales, 446 F.3d 533, 538 (4th Cir.

---

[4] Because the IJ rested her denial of Muda's withholding of removal claim on her unsupported and unexplained denial of his asylum claim, we also cannot conclude that substantial evidence supported such denial.

2006) (holding that IJs must provide "specific, cogent reason[s]" for their credibility findings).

While there is some indication that the IJ and BIA considered past persecution, their discussion of the two asserted key pieces of missing evidence (letters from petition-signers and Muda's aunt or mother) focused exclusively on the well-founded fear of <u>future</u> persecution question. We cannot tell what effect the agency believed this missing evidence had on Muda's showing of <u>past</u> persecution. (Nor can we discern whether the agency determined that other missing evidence -- regarding property disputes -- in and of itself rendered Muda unable to demonstrate past persecution.) In sum, we cannot find in the agency's rulings any conclusion -- or any explanation for a conclusion -- that Muda's credible testimony and voluminous documentary evidence failed to sustain his burden of proof as to past persecution.[5]

---

[5] Further, "[t]he absence of reasoned discussion of past persecution undercuts any meaningful review of the IJ's fear of future persecution finding, because we do not know whether [Muda] should have had the benefit of the regulatory presumption of fear of persecution based on prior events." <u>El Moraghy v. Ashcroft</u>, 331 F.3d 195, 204-05 (1st Cir. 2003) (citing 8 C.F.R. § 208.13(b)(1)); <u>see also</u> <u>Tan v. U.S. Att'y Gen.</u>, 446 F.3d 1369, 1377 (11th Cir. 2006). Therefore, we do not reach Muda's claim that the agency erred in finding that he had not shown a well-founded fear of future persecution.

The agency's failure to address past persecution precludes us from upholding its denial of relief because such a result would require us to substitute our reasoning for the agency's. See Chenery, 318 U.S. at 88 ("[A] judicial judgment cannot be made to do service for an administrative judgment.").  Instead, we must remand the case to the agency for its determination in the first instance.  See Zuh v. Mukasey, 547 F.3d 504, 513 (4th Cir. 2008).[6]

IV.

"We would run the risk of violating fundamental separation-of-powers principles if we attempted to divine the [agency's] thoughts on this matter and tried to build a legal conclusion in

---

[6] The IJ and BIA also failed to provide any explanation for a finding that Muda could "reasonably obtain" the missing corroborating evidence, 8 U.S.C. § 1158(b)(1)(B)(ii), or that the facts Muda could not prove without such evidence were "central to his . . . claim and easily subject to verification." Matter of J-Y-C, 24 I&N Dec. 260, 263 (BIA 2007) (internal quotation marks omitted).  Despite testimony from Muda as to the unavailability of the missing evidence, the IJ made no finding as to availability, and neither the IJ nor the BIA provided any explanation supporting such a finding.  And despite language in the BIA's own interpretation of the 2005 amendments, which suggests that it will only require further evidence to corroborate central and easily verifiable facts –- language that the BIA itself quoted in denying Muda's claim -- the IJ and BIA failed to conduct any analysis, or announce any conclusion, as to centrality or verifiability.   "We are not to invent explanations that may justify the [agency's] conclusion."  Dia v. Ashcroft, 353 F.3d 228, 260 (3d Cir. 2003).

10

a veritable vacuum where [agency] interpretation should always first exist." Li Fang Lin v. Mukasey, 517 F.3d 685, 694 (4th Cir. 2008). Accordingly, we must grant Muda's petition for review and remand to the BIA for further proceedings consistent with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

PETITION FOR REVIEW GRANTED;
VACATED AND REMANDED

11