**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1690**

ABEBE GEBREMICHAEL TOLESA,

              Petitioner,

        v.

ERIC H. HOLDER, JR., Attorney General,

              Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: September 25, 2009          Decided: December 3, 2009

Before NIEMEYER, MICHAEL, and KING, Circuit Judges.

Petition denied by unpublished per curiam opinion.

**ARGUED:** Jason Alexander Dzubow, MENSAH, SHOEMAKER & DZUBOW, PLLC, Washington, D.C., for Petitioner.  Ada Elsie Bosque, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:** Gregory G. Katsas, Assistant Attorney General, Civil Division, William C. Peachey, Assistant Director, Office of Immigration Litigation, Mona Maria Yousif, Civil Division, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Abebe Gebremichael Tolesa petitions this court for review of an order by the Board of Immigration Appeals (BIA) dismissing his appeal from the Immigration Judge's (IJ's) decision denying his application for asylum.[*] Tolesa argues that the BIA erroneously upheld the IJ's determination that Tolesa had failed both to provide corroborating evidence in support of his asylum claim and to demonstrate that he had a well-founded fear of future persecution. We deny the petition because it was not an abuse of discretion for the IJ to conclude that Tolesa had failed to demonstrate a well-founded fear of future persecution.

I.

A.

Tolesa is a native and citizen of Ethiopia who belongs to the Oromo ethnic group. Since 1988 he has served in the Ethiopian military, currently holding the rank of captain. In 1991 the present government of Ethiopia came to power and initially imprisoned Tolesa along with other officers who served the previous regime. While he was later released back into

---

[*] While Tolesa also pursued claims before the IJ for withholding of removal and withholding pursuant to the United Nations Convention Against Torture (CAT), he does not petition this court to review the BIA's dismissal regarding those claims.

2

military service, Tolesa was watched with suspicion because the new government, comprised largely of ethnic Tigreans, distrusted Oromos. Eventually, however, Tolesa obtained the government's trust and came to lead a prosperous life as a military trainer.

At some point Tolesa began to support a political opposition party called the Coalition for Unity and Democracy (CUD). Because the Ethiopian military prohibits its members from participating in political activities, Tolesa attests that, while in Ethiopia, he expressed his support for CUD in "clandestine and discreet ways." J.A. 256. Tolesa testified that he formed a "cell" along with three other officers, Major Gidey, Captain Melaku, and Captain Abera. Id. at 153. He further testified that, in addition to encouraging support among other members of the military through this cell, he discussed CUD with his family and friends.

In early 2005 Ethiopia conducted a highly contested election, which culminated in the government announcing that it had retained power. CUD loudly denounced the results as fraudulent and launched multiple protests. There was a crackdown, and the brutal treatment of CUD supporters and of the press was widely reported. Tolesa had been sent for training in the United States shortly before the election and therefore did not participate in the protests. From the United States, however, he learned that several members of his cell had been

3

discovered. Major Gidey was caught watching a CUD video and required to relocate, allegedly to deprive him of needed medical resources. Gidey died soon after his relocation. Captain Abera was also discovered and consequently reassigned and mistreated. To the best of Tolesa's knowledge, Captain Melaku's CUD association remains unknown to the Ethiopian government.

Tolesa testified that the government first learned of his own CUD activities in late October 2005 while he was still in the United States. The police had spoken to his brother and wife about his CUD activities and made various threats. Based on the treatment of his colleagues, Tolesa concluded that returning to Ethiopia in March 2006 when his training ended would subject him to persecution and maybe even death. When he failed to return home after his training ended, the police issued a summons demanding his presence for questioning. When he failed to respond, the police issued a second summons demanding that his wife report for questioning. The first summons contains the following statement: "It is known that the duty of a member of the armed forces is to guard the constitution and defend the territorial integrity of his country and [that] he is not to get involved in any political activities." J.A. 407. The summons cites Tolesa's violation of the "foregoing principle" as the reason for its issuance. Id.

4

In addition to his own testimony, Tolesa provided the testimony of another member of the Ethiopian military, Assesa Ambo, who was also in the United States for training and who is also currently seeking asylum. Ambo generally corroborated Tolesa's account of the treatment of CUD supporters and the threat of persecution if he and Tolesa returned. Among the documentary evidence Tolesa provided to corroborate his account were: (1) signed letters from his wife attesting to the Ethiopian government's knowledge of his CUD association, the "serious retaliatory measure[s]," J.A. 393, including death, that awaited him should he return, and the threats made to her by the Ethiopian police; (2) the two summonses issued by the Ethiopian government; and (3) various background materials from the U.S. State Department, Human Rights Watch, and the press documenting the persecution of CUD supporters in Ethiopia.

B.

The IJ found Tolesa "generally credible." J.A. 82. "His testimony was detailed, plausible, in most accounts, internally consistent and generally consistent with the asylum application and his statement, as well as with the statement of his other witnesses." Id. at 82-83. Nevertheless, the IJ rejected Tolesa's application on two grounds: (1) Tolesa had failed to carry his burden of proof because he had produced

5

insufficient corroborating evidence; and (2) he had failed to establish a well-founded fear of persecution.

With regard to Tolesa's alleged fear of persecution, the IJ found that it was not clear that Tolesa feared persecution as much as prosecution. Citing the summons issued to Tolesa, the IJ found it was "not clear whether the government wants to talk to [Tolesa] because of his work on behalf of the CUD or because he simply violated the rules or restrictions against political activity or involvement for any reason by members of the active duty military." J.A. 86. If the Ethiopian government sought to punish Tolesa under regulations forbidding the military from engaging in political activity -- whether it be for the opposition or for the government -- the punishment would not be persecution but prosecution under legitimate criminal or military rules.

After denying Tolesa's asylum application, the IJ summarily dismissed Tolesa's application for withholding of removal and CAT claim because the burden for asylum was less than that for withholding of removal and because there was insufficient evidence "to establish even a reasonable chance that [Tolesa] will face torture should he be removed to Ethiopia." Id. at 88. The BIA summarily affirmed in a brief, three-paragraph decision, adopting the IJ's rationale on every claim. Tolesa next filed this petition for review.

6

The BIA's decision is a final order of removal.  While ordinarily we review only the decision of the BIA, when the BIA adopts the reasoning of the IJ and summarily affirms, we review the IJ's decision.  Gandarillas-Zambrana v. BIA, 44 F.3d 1251, 1255 (4th Cir. 1995).  We review the IJ's findings of fact under the substantial evidence rule, and we must treat these findings as conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary."  Abdel-Rahman v. Gonzales, 493 F.3d 444, 448 (4th Cir. 2007); 8 U.S.C. § 1252(b)(4)(B).  We review all legal issues de novo.  Abdel-Rahman, 493 F.3d at 449.  The final administrative decision concerning removal, however, will not be disturbed unless we determine that it is "manifestly contrary to law and an abuse of discretion."  Naizgi v. Gonzales, 455 F.3d 484, 487 (4th Cir. 2006); 8 U.S.C. § 1252(b)(4)(D).

Although the IJ reached his conclusion on two alternate grounds, we affirm on only one:  that Tolesa failed to establish a well-founded fear of future persecution.  "The Attorney General has the discretion to grant asylum to an alien who successfully demonstrates that he qualifies as a refugee."  Lin-Jian v. Gonzales, 489 F.3d 182, 187 (4th Cir. 2007).  An applicant qualifies as a refugee if he demonstrates that he has suffered from past persecution, or has a well-founded fear of

future persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13(b). To demonstrate a well-founded fear of future persecution, the applicant must show both that he is "subjectively afraid and that the fear is objectively well-founded." Lin-Jian, 489 F.3d at 188. For the fear to be objectively well founded, there must be "a reasonable possibility of suffering such persecution if [the applicant] were to return" to his country. 8 C.F.R. § 1208.13(b)(2)(i). The testimony of the applicant is almost always critical to determining whether asylum is appropriate and "if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.13(a); 8 U.S.C. § 1158(b)(1)(B)(ii). However, while a finding of credibility will likely be sufficient to establish that the applicant is subjectively afraid of persecution, it will not necessarily be sufficient to establish that his fear is objectively well founded. See Najjar v. Ashcroft, 257 F.3d 1262, 1289 (11th Cir. 2001).

Although the IJ's reasoning is not explicit, we take his conclusion concerning Tolesa's alleged fear of persecution to rest on the objective component of the statute. The IJ found Tolesa credible, implying that the IJ believed Tolesa when he testified that he feared severe retribution from the Ethiopian

8

government on account of his political opinions. Moreover, the IJ's focus on the summons and the purpose for which the Ethiopian government sought his return suggest that the IJ was assessing whether Tolesa's belief was objectively well founded.

Central to the IJ's assessment was the statement in the summons that the Ethiopian government restricts the political speech of its military personnel. The IJ took this statement to be evidence of a regulation prohibiting political speech in the military. The IJ reasoned that even if such a rule was problematic, its presence, without additional evidence, weighed against a persecutory motive by the Ethiopian government. Indeed, the IJ held that "even given the persecution and mistreatment of some activists of the CUD in Ethiopia in recent years," it was "too speculative" to conclude that Tolesa was being summoned for persecution. J.A. 86. Tolesa had simply failed to carry his burden of demonstrating that the punishment awaiting him was on account of dissident political speech rather than violation of a neutral military regulation.

Tolesa argues in response that the military regulation in question was not, in fact, neutrally applied. Persecution can still occur under the guise of prosecution if the prosecutor's motive is to target protected conduct. Abdel-Rahman, 493 F.3d at 452 ("where the motive underlying a

9

purported prosecution is illegitimate, such prosecution is more aptly called persecution"). In support of this argument Tolesa testified that the requirement that army officers "not openly give [themselves] to a political group" in fact meant that they "were allowed only to give [themselves] to the government" and not to any opposition group. J.A. 152. He further testified that if he returned to Ethiopia, "the Ethiopian government will kill me because of my political opinion" rather than the violation of a military regulation. Id. at 163. Finally, Tolesa argues that the government's transfer of Major Gidey when it knew of his medical problems is evidence of persecution and not merely prosecution for violation of a regulation.

Given the record, we cannot conclude that the IJ's rejection of Tolesa's argument was "manifestly contrary to law and an abuse of discretion." Except for the evidence concerning the Ethiopian government's general hostility towards CUD supporters, Tolesa's evidence is entirely consistent with the government having a legitimate prosecutorial motive. The summons states its purpose in neutral terms, purporting to seek his presence for violation of a military regulation. Even if the Ethiopian government has applied such a regulation to punish CUD supporters, there is no evidence in the record of any instances in which the Ethiopian government declined to apply it to their own supporters, and hence no evidence that the

10

government does not apply the regulation neutrally. Moreover, assuming Major Gidey and Captain Abera were punished for violating the regulation, their transfers are minor punishments compared with the death and torture that Tolesa claims await him in Ethiopia. Considering the nature of the offense, that is, political activity in violation of a military regulation, the punishment imposed on Gidey and Abera suggests a prosecutorial motive rather than a persecutory one.

Indeed, the only evidence Tolesa offers that the Ethiopian government has a persecutory motive here is his belief, shared by his wife and fellow officer Ambo, that it has such a motive. While a finding of credibility entails the conclusion that Tolesa testified truthfully, it does not entail the conclusion that Tolesa's belief is reasonable. Tolesa could simply be wrong in believing that death awaits him for his political views. Immigration judges must regularly make judgments concerning not only the credibility of an applicant but also the existence of an objectively reasonable basis for an applicant's honestly held beliefs. Here, the IJ appears to have ultimately found that there was insufficient evidence to support an objectively reasonable basis for Tolesa's specific belief. Without such a basis, the IJ could not conclude that there was a reasonable possibility that Tolesa would suffer persecution in Ethiopia. In light of the record as a whole, we cannot hold

11

that the IJ's conclusion was manifestly contrary to law or an abuse of discretion.

* * *

For the reasons stated, we deny Tolesa's petition for review.

<u>PETITION DENIED</u>

12