**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1211**

EVELYNE; NICKY JANTO,

           Petitioners,

     v.

ERIC H. HOLDER, JR., Attorney General,

           Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: January 26, 2011        Decided: March 29, 2011

Before TRAXLER, Chief Judge, and NIEMEYER and AGEE, Circuit Judges.

Petition for review denied by unpublished opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Traxler and Judge Agee joined.

**ARGUED**: Arnedo Silvano Valera, LAW OFFICES OF VALERA & ASSOCIATES, Fairfax, Virginia, for Petitioners. Terri Jane Scadron, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF**: Tony West, Assistant Attorney General, Civil Division, Anthony Wray Norwood, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

Evelyne (Soehardjo)[*] filed an application for asylum and related relief based on past persecution in Indonesia. Her husband, Nicky Janto, filed a similar application as a derivative beneficiary of Evelyne. Both Evelyne and Janto are citizens of Indonesia, ethnic Chinese, and practicing Christians.

Finding fundamentally changed country conditions in Indonesia, the Board of Immigration Appeals ("BIA") denied their applications, and Evelyne and Janto filed this petition for review.

Because we cannot conclude from the record that the evidence would compel us to conclude otherwise, see INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992), we affirm the BIA and deny the petition for review.

---

[*] Evelyne used her first name as her only name on her Indonesian passport. She also used only Evelyne in her application for asylum, even though she signed her name, "Jantoevelyne." The record shows, however, that earlier she included her father's surname Soehardjo, as appears on her certificate of baptism in 1998 and her certificate of marriage in 2000. We will, however, follow the practice of the Department of Homeland Security in using only the name "Evelyne."

2

Evelyne and Nicky Janto are natives and citizens of Indonesia, who married in 2000. They are ethnic Chinese and practicing Catholics.

The parties agree that Evelyne suffered past persecution based on her religion and ethnicity in 1998 and again in 2001. Specifically, on May 14, 1998, Evelyne was driving her car in Jakarta when she was approached by a large group of people. About 10 of the group began banging on her car with sticks and stones and calling her derogatory terms used to describe Chinese girls and non-Muslims. Eventually the attackers broke her car window, opened her car door, and dragged her into the street. She was stripped naked, beaten, and groped, and her purse and other belongings were stolen. Evelyne saw a police officer on the street, but he did not hear her screams for help. Evelyne eventually fainted. When she regained consciousness, she found herself in a hospital, where she remained for 10 days. After this incident, Evelyne resigned as a manager at a securities firm, because she was afraid to leave the house, and began working informally in her mother's store, which was located near her home.

In January 2001, after Evelyne and Janto were married, they hosted a Bible study in their home, which three other couples attended. During the Bible study, a group of Muslims broke into

the house, beat the four men present with sticks, and dragged the women to the back of the house. Evelyne's shirt was torn off and her breasts grabbed. One of the other women was close to being raped. The intruders also destroyed the furniture and stomped on the Bibles. Their activities were halted only when a Muslim cleric entered the house and told the intruders to stop. After they did so, the cleric told the couples that this was a "warning" and "if you still do something like this again, if you do this gathering again, I cannot guarantee your safety." Evelyne had called the police during the intrusion, and two policemen eventually arrived and questioned everyone, but wrote nothing down. They said they would send someone back to the house to prepare a formal report, but no one came. When Evelyne's family later asked the police about the report, they were told there was no record of the incident.

Following the January 2001 incident, Evelyne and Janto decided to leave Indonesia. They applied for tourist visas to come to the United States, fearing that their visa applications would be denied if they disclosed their intent not to return to Indonesia. They were admitted to the United States on May 13, 2001, on non-immigrant visas, which authorized a six-month stay.

In May 2002, Evelyne filed an asylum application with the Immigration and Naturalization Service, listing Janto as a derivative beneficiary, and Janto filed a derivative

4

application. The Immigration and Naturalization Service denied both applications and referred Evelyne and Janto to the Immigration Court for removal proceedings. The Department of Homeland Security, which succeeded the Immigration and Naturalization Service, served Evelyne and Janto with notices to appear, charging them with removability under 8 U.S.C. § 1227(a)(1)(B), as persons overstaying their non-immigrant visas.

Appearing before an immigration judge in December 2003, Evelyne and Janto conceded their removability but renewed their request for asylum. They also requested withholding of removal and relief under the Convention Against Torture. The immigration judge found the application for asylum timely; determined that Evelyne was a credible witness; and concluded that Evelyne established a "viable claim of past persecution on account of religion in Indonesia." To rebut the presumption of a well-founded fear of <u>future</u> persecution that attaches in that circumstance, the Department of Homeland Security provided the immigration judge with documentary evidence of country conditions in Indonesia, which included the U.S. Department of State 2006 Country Report on Human Rights Practices for Indonesia, and the 2006 International Religious Freedom Report for Indonesia. The Religious Freedom Report stated that although the government sometimes tolerated religious discrimination and the abuse of religious groups by private

5

actors during the reporting period, government officials also worked with Muslim and Christian community leaders to diffuse tensions in conflict areas. The government also prosecuted more than 52 terrorists and religious extremists during the course of that year. Both the Country Conditions Report and the Religious Freedom Report referred to sporadic incidents of religiously motivated violence in Indonesia, but neither report described any incidents in the Jakarta area, where Evelyne and Janto had lived. The reports gave a mixed picture of abuses against Christians in Indonesia as a whole, suggesting that the situation had improved from prior years but indicating that some abuse, especially by private actors, had continued.

Relying on this evidence, the immigration judge found that the Department of Homeland Security had proved fundamentally changed country conditions in Indonesia, such that Evelyne lacked a well-founded fear of future persecution. The judge also found that Evelyne had not introduced other evidence that would support a well-founded fear of future persecution. Therefore, the judge denied the application for asylum, the request for withholding of removal, and relief under the Convention Against Torture.

The BIA affirmed, concluding, on the basis of its own analysis, that Evelyne lacked a well-founded fear of future persecution due to fundamentally changed country conditions. In

analyzing the evidence of country conditions in Indonesia, the BIA found evidence of ongoing discrimination against Indonesians of Chinese ethnicity but concluded that such discrimination did not rise to the level of persecution. It noted that the 2006 State Department Country Reports indicated "improvements in the relations between religions." The BIA also concluded that many of the documents that had been presented by Evelyne did not describe current conditions and that the more recent evidence did "not establish that there [was] ongoing widespread harm to ethnic Chinese Christians in Indonesia." The BIA also found no "pattern or practice" of persecution of ethnic Chinese in Indonesia, especially because "the government does not condone or support persecution of its ethnic Chinese citizens."

In addition, the BIA denied discretionary humanitarian relief, stating that the acts perpetrated against Evelyne were "not so severe as to warrant a grant of asylum in the exercise of discretion."

Finally, because Evelyne had not established eligibility for asylum, the BIA held that Evelyne had not satisfied the higher "clear probability" standard for withholding of removal or the "more likely than not" standard for relief under the Convention Against Torture.

Evelyne and Janto filed this petition for review of the BIA's decision.

7

The Attorney General may grant asylum to a person unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); 8 U.S.C. § 1158(b); see also Naizgi v. Gonzales, 455 F.3d 484, 486 (4th Cir. 2006). If an applicant for asylum shows past persecution, she receives the benefit of a presumption of a well-founded fear of future persecution. This presumption, however, can be rebutted if the Department of Homeland Security proves a fundamental change in conditions such that the fear is no longer well-founded. See 8 C.F.R. § 1208.13(b)(1); Naizgi, 455 F.3d at 488.

We review a BIA decision based on a factual determination for substantial evidence. Dankam v. Gonzales, 495 F.3d 113, 119 (4th Cir. 2007). Under this standard, the BIA's factual determinations "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Accordingly, we "must affirm a determination of statutory ineligibility by the BIA unless the 'evidence presented was so compelling that no reasonable factfinder could fail to find' eligibility for asylum." Dankam, 495 F.3d at 119 (quoting INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992)).

Evelyne and Janto argue that the BIA decision was not supported by substantial evidence because "[n]o evidence ha[d] been introduced . . . to categorically show that such simmering and pervasive anti-Chinese Christian sentiment has dissipated and the persecution and violence perpetrated against them will no longer recur." They argue that the State Department reports are "at most ambivalent," observing that although the reports show that "the Indonesian government has adopted some measures to address the problem" of interreligious violence, they also indicate that "violence is still being perpetrated against Chinese Christians," and that the government is powerless to prevent it.

The Attorney General argues that the BIA's decision was supported by the substantial evidence of the State Department's 2006 County Report and Religious Freedom Report for Indonesia, which demonstrate a markedly different condition in Indonesia from the time when Evelyne and Janto departed from the country in 2001. The Attorney General notes, "the report indicates that '[g]overnment officials worked with Muslim and Christian community leaders to diffuse tensions in conflict areas'" and that although the government sometimes tolerated religious discrimination and abuse by private actors, it also vigorously prosecuted religious terrorists. In addition, the Attorney General points out that the incidents of religiously motivated

9

violence were confined to specific regions in Indonesia that were geographically removed from Jakarta, which is where Evelyne and Janto lived. He concludes that "although the State Department evidence does not portray perfect conditions in Indonesia, it is sufficient to permit a reasonable factfinder to conclude that conditions, especially in the Jakarta area, have changed fundamentally since the 1998 riots, and since the January 2001 assault during [the] bible study session."

We agree with Evelyne and Janto that the record evidence presented a picture of imperfect conditions in Indonesia, but we also conclude that this weakness is not "so 'compelling that no reasonable factfinder could fail to find' eligibility for asylum." Dankam, 495 F.3d at 119 (quoting Elias-Zacarias, 502 U.S. at 484); but see Imelda v. U.S. Attorney General, 611 F.3d 724 (11th Cir. 2010). We emphasize that we are not considering the evidence in the first instance, but rather are reviewing the BIA decision under a highly deferential standard, and under this standard we are persuaded that the evidence would not compel any reasonable factfinder to conclude that Evelyne and Janto were eligible for asylum.

We note particularly that the State Department Reports provided no descriptions of religiously-motivated violence in the Jakarta area and scant evidence of other problematic but nonviolent religiously-motivated misconduct. Because the State

10

Department reports are required by law to be "a full and complete report" of human rights abuses, we can assume that they provided an accurate depiction of the presence or absence of such abuses. See 22 U.S.C. § 2151n(d) (stating that State Department country reports shall provide "a full and complete report" of "the status of internationally recognized human rights" and, "wherever applicable, violations of religious freedom"). The absence of documented religiously-motivated violence in the Jakarta area is substantial evidence that such violence no longer exists there, or at least is significantly reduced from prior levels, and this evidence was sufficient to support the BIA's determination of fundamentally changed country conditions. We therefore affirm the BIA's denial of the asylum applications.

III

Evelyne and Janto also provide other bases by which to challenge the order of removal. First, they argue they should be eligible for asylum based on a pattern or practice of persecution against Chinese Christians in Indonesia. The Country Conditions Report, however, as noted above, supports the BIA's finding of no pattern or practice of persecution, and therefore we affirm that finding, again under the deferential standard of review.

11

Evelyne and Janto also argue that they should have been granted asylum on humanitarian grounds. See 8 C.F.R. § 1208.13(b)(1)(i); Gonahasa v. INS, 181 F.3d 538, 544 (4th Cir. 1988). But discretionary humanitarian relief is available only in the "rare case where past persecution is so severe that it would be inhumane to return the alien even in the absence of any risk of future persecution." Naizgi, 455 F.3d at 487 (internal quotation marks omitted). Such discretionary relief is "designed for the case of the German Jews, the victims of the Chinese 'Cultural Revolution,' survivors of the Cambodian genocide, and a few other such extreme cases." Bucur v. INS, 109 F.3d 399 (7th Cir. 1997); see also Ngarurih v. Ashcroft, 371 F.3d 182, 190 (4th Cir. 2004). The persecution suffered by Evelyne and Janto, while serious, did not involve the extreme abuse for which discretionary humanitarian relief was designed. Accordingly, we also affirm the BIA's denial of humanitarian relief.

Third, Evelyne and Janto contend that they should be eligible for withholding of removal under 8 U.S.C. § 1231(b)(3). See also 8 C.F.R. § 1208.16(b). Withholding of removal is only available to refugees who "more likely than not" would face future persecution, which is a higher standard than the "well-founded fear" standard for asylum. See Camara v. Ashcroft, 378 F.3d 361, 367 (4th Cir. 2004). Because we affirm the BIA's

12

conclusion that Evelyne and Janto lack a well-founded fear of future persecution, it follows that their proof fails under the higher "more likely than not" standard applicable for withholding of removal.

Finally, Evelyne and Janto contend that they should be eligible for relief under the Convention Against Torture. See 8 C.F.R. § 1208.16(c). This relief, however, is yet more difficult to obtain, because it requires (1) a "more likely than not" probability (2) of torture, rather than persecution (3) by, or with the acquiescence of, government officials. See id.; 8 C.F.R. § 1208.18(a). Because Evelyne and Janto have not satisfied these heightened requirements, we affirm the BIA's denial of relief under the Convention Against Torture.

For the reasons given, we affirm the BIA's ruling denying Evelyne and Janto's applications for asylum and other relief from its removal order and deny their petition for review.

PETITION FOR REVIEW DENIED

13