UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-2064

SHAO LAN YAN, a/k/a Shaolan Yan,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: September 21, 2012         Decided: November 27, 2012

Before DUNCAN, AGEE, and DIAZ, Circuit Judges.

Petition denied by unpublished per curiam opinion.

**ARGUED:** Gary Jay Yerman, YERMAN & ASSOCIATES, LLC, New York, New York, for Petitioner. Nancy Kwang Canter, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Tony West, Assistant Attorney General, Civil Division, Jennifer P. Levings, Senior Litigation Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Shao Lan Yan, a native and citizen of the People's Republic of China, petitions for review of an order of the Board of Immigration Appeals ("the Board") dismissing her appeal from the immigration judge's ("IJ") denial of her requests for asylum and withholding of removal. For the reasons set forth below, we deny the petition for review.

I.

Yan arrived in the United States in June 2003 and did not possess valid entry documents. The Department of Homeland Security ("DHS") detained her at the Miami International Airport. In an interview conducted at the airport, Yan claimed that she was seeking political asylum because she had left China to "[a]void getting married with a guy." (J.A. 6.)

A few days later, an asylum officer conducted a credible fear interview. Yan explained that the village chief's nephew had come to her parent's house and asked for her parents' permission to marry her. Her parents denied permission, at which point the nephew became angry, vandalized their home, and kicked her younger brother when he tried to intervene. Yan claimed that the nephew returned with some of his friends several days later and that she agreed to marry him so that he would not vandalize her parent's home again. Even so, the

2

nephew's friends destroyed some of her parents' personal belongings. Yan stated that she did not report these incidents to the local police because the village chief is a government official, and they "protect each other." (J.A. 13.) Because Yan did not want to marry the village chief's nephew, Yan decided to flee China. Yan stated that she feared returning to China because forced marriages are common, and she might be forced to marry the village chief's nephew.

The asylum officer referred Yan's case to an IJ, and the DHS commenced removal proceedings by issuing a Notice to Appear, charging Yan with removability as an alien not in possession of a valid entry document. Before an IJ in New York, New York, Yan conceded removability and sought relief in the form of asylum and withholding of removal; she waived the right to seek protection under the Convention Against Torture.

Yan subsequently filed an application for asylum and withholding of removal. There, Yan asserted for the first time that she had been forced to undergo an abortion in China. She claimed that her pregnancy violated China's birth control policy because she did not have a marriage registration or a birth permit, and that despite her pleas to keep her unborn child, the clinicians forcibly terminated her pregnancy. Yan also reiterated her claim that the village chief's nephew had sought to marry her, and had vandalized her parents' home when she

3

refused.  Yan asserted that she feared she would "be forced to marry a person [she] do[es] not love and do[es] not wish to marry" if she returned to China.  (J.A. 69.)

Yan attached several documents to her application, including a letter from her mother describing Yan's forced abortion and the village chief's nephew's attempts to marry her, and a letter from her boyfriend describing the same.

The IJ held a hearing on the merits of Yan's claims for relief.  When asked why she did not mention the abortion during her initial or credible fear interviews, Yan stated that the abortion "has been a long time already," and that during the interview she was "quite scared and what [she] said was not very complete."  (J.A. 338-39.)

With respect to the forced marriage claim, Yan's allegations regarding the nephew's visits to her parents' house echoed her prior statements, except that for the first time she stated the nephew visited the home a third time, after she fled China.  She claimed that once the village chief's nephew realized she had left, "he threw a few things . . . and ate in [her parents'] home.  He ate for free."  (J.A. 357.)  Yan "d[id]n't know" why she failed to mention this third visit in any of her prior accounts or why her mother failed to mention it in her letter.  (J.A. 357.)  She also indicated for the first time that her father had lost his job as a sanitation worker and

4

that she thought it was because she had refused to marry the village chief's nephew.[1] She claimed that although she learned of her father's termination prior to completing her asylum application, she had not included the information then because she "didn't think about it." (J.A. 342.) Yan did not have an explanation for why her mother did not mention the father's job loss in the letter she wrote to support Yan's application.

The IJ continued the proceedings to permit Yan more time to acquire documentary evidence in support of her claims. At the subsequent merits hearing, Yan submitted a copy of an abortion certificate dated July 2, 2002, stating that an abortion was performed on Yan "in this hospital on July 2." (J.A. 228.)

In an oral decision ("September 2005 IJ Decision"), the IJ denied Yan's application for relief. The IJ first determined that Yan was not credible with respect to her claim of past persecution based on a forced abortion. The IJ found it implausible that Yan would have failed to mention having a forced abortion in either of her first two interviews, especially given that there were questions specifically asking Yan whether she or any family members had ever been "threatened or mistreated." (See J.A. 11.) The IJ also harbored doubts

---

[1] Asked whether her father lost his job "because you escaped . . . because you didn't marry the nephew of the chief," Yan replied, "Maybe, I think so. I think that's why." (J.A. 341.)

about the abortion certificate's validity, noting that although it was purportedly issued in 2005, it bore a 2002 issuance date. In addition, the IJ noted that a recent U.S. State Department report had cautioned about a "very high rate of fraud or fabrication of documents emanating from" the region of China where Yan lived. (J.A. 422-23.)

With respect to the claim based on the threat of forced marriage, the IJ found that Yan failed to establish persecution on account of a protected ground. The IJ instead believed that Yan's account indicated "a personal dispute between [Yan] and the person who wants to marry her." (J.A. 423-24.) The IJ reasoned that even if Yan's testimony were accepted in whole, the basis of her claim would not fall within any of the protected categories for asylum or withholding of removal.

Yan appealed the IJ's decision to the Board, which summarily remanded the case for further proceedings in light of Gao v. Gonzales, 440 F.3d 62 (2d Cir. 2006).[2]

Following the remand but prior to any further proceedings, Yan moved for a change of venue based on her recent relocation

---

[2] In Gao, the Second Circuit held, inter alia, that "women who have been sold into marriage (whether or not that marriage has yet taken place) and who live in a part of China where forced marriages are considered valid and enforceable" constitute a "particular social group" for purposes of establishing eligibility for asylum. 440 F.3d at 70-71.

6

to Virginia. The motion was granted and Yan's case was transferred to an IJ in Arlington, Virginia. During the same interim period, the Supreme Court granted the petition for writ of certiorari in Gao, vacated the Second Circuit's judgment, and remanded the case for reconsideration in light of Gonzales v. Thomas, 547 U.S. 183 (2006) (per curiam). See Keisler v. Gao, 552 U.S. 801 (2007).

The Virginia IJ denied Yan's applications for relief and ordered her removed to China. In so doing, the IJ noted that although the Board had remanded the case for reconsideration in light of Gao, such reconsideration was no longer necessary due to the transfer of Yan's case out of the Second Circuit and the Supreme Court's action in Gao, each of which made Gao no longer precedential authority. The IJ then adopted and reissued in whole the September 2005 IJ Decision denying Yan's applications.

Yan appealed the IJ's decision to the Board, which dismissed her appeal. The Board affirmed the IJ's determination that reconsideration in light of Gao was no longer necessary. Turning to the merits of Yan's case, the Board found no clear error in the IJ's finding that Yan "did not credibly establish that she had a forced abortion in China." (J.A. 535.) In addition, the Board found that Yan failed to demonstrate past persecution on account of a threat of forced marriage because the conduct she testified to did not "rise[] to the level of

7

past persecution." (J.A. 536.) The Board also agreed with the IJ that Yan had not demonstrated a "well-founded fear of future persecution on account of a statutorily enumerated ground" because she did not belong to her proposed protected social group ("women who suffered forced marriage") given that Yan fled China prior to being required to marry the village chief's nephew. (J.A. 536.) The Board then re-characterized Yan's proposed group as "women who have been targeted for forcible marriage in the past" and concluded that such a group was not cognizable under the INA because it "is not particularized or socially visible." (J.A. 536.)

Yan filed a timely petition for review of the Board's decision, and we have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).

II.

We review the Board's administrative findings of fact under the substantial evidence rule, treating such findings as conclusive "unless the evidence before the [Board] was such that any reasonable adjudicator would have been compelled to conclude to the contrary." Haoua v. Gonzales, 472 F.3d 227, 231 (4th Cir. 2007); see 8 U.S.C. § 1252(b)(4)(B)-(D). We review legal issues de novo, "affording appropriate deference to the [Board]'s interpretation of the INA and any attendant

8

regulations." Lin v. Mukasey, 517 F.3d 685, 691-92 (4th Cir. 2008).

The INA authorizes the Attorney General to confer asylum on any refugee. See 8 U.S.C. § 1158(a). To establish eligibility for the discretionary grant of asylum, Yan has the burden of showing, inter alia, that she has "suffered past persecution" or "has a well-founded fear of future persecution" "on account of . . . membership in a particular social group . . . ." 8 C.F.R. § 1208.13(b); see Nazigi v. Gonzales, 455 F.3d 484, 486 (4th Cir. 2006). Yan could proceed to meet this burden in either of two ways: She could show that she was subjected to past persecution, in which case a rebuttable presumption arises that she has a well-founded fear of future persecution. Ngarurih v. Ashcroft, 371 F.3d 182, 187 (4th Cir. 2004). Or, regardless of proof of past persecution, Yan could demonstrate eligibility based solely on a well-founded fear of future persecution. Id. There is both a subjective and an objective component to this latter approach. The subjective component is satisfied "by presenting candid, credible, and sincere testimony demonstrating a genuine fear of persecution." Chen v. INS, 195 F.3d 198, 201 (4th Cir. 1999) (quotation marks omitted) (quoting Berrotean-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1987)). "The objective element requires the asylum [applicant] to show, with specific,

concrete facts, that a reasonable person in like circumstances would fear persecution." Id. at 202.

A.

We have reviewed the record evidence and conclude that substantial evidence supports the IJ's adverse credibility determination and denial of relief on Yan's claim of past persecution on account of having a forced abortion.[3] The IJ and the Board articulated three specific and cogent reasons that raised material concerns as to whether Yan was forced to have an abortion. See Djadjou v. Holder, 662 F.3d 265, 273 (4th Cir. 2011) (stating that "the agency must provide specific, cogent reasons for making an adverse credibility determination"). Moreover, these concerns go directly "to the heart" of Yan's

---

[3] Yan asserts for the first time on appeal that the IJ did not actually make an adverse credibility determination, but rather simply expressed "doubts" as to her credibility. This argument is belied by the text of the IJ's decision, which unequivocally states, "I'm just not convinced that [Yan's] testimony is of a credible nature . . . ." (J.A. 423.) Moreover, Yan has waived this challenge by failing to raise it in her appeal to the Board and by conceding before the Board that the IJ had made an adverse credibility finding. See Farrokhi v. INS, 900 F.2d 697, 700 (4th Cir. 1990) ("[A]n alien who has failed to raise claims during an appeal to the Board has waived his right to raise those claims before a federal court on appeal of the Board's decision.").

claim.[4]  Id. at 273-74.  Those reasons were: (1) Yan's failure to mention being forced to undergo an abortion at either her airport or credible fear interviews, despite being asked whether she or any family members had been threatened or mistreated in China; (2) the suspect authenticity of the abortion certificate, which bore an issuance date of July 2, 2002, even though it was allegedly obtained by Yan's father sometime after the May 2005 merits hearing; and (3) the U.S. State Department report's conclusion that "documentation from China is subject to widespread fabrication and fraud," particularly in Yan's region of the Fujian Province, including "documents that purportedly verify . . . births and birth control measures."  (J.A. 207-10.) Because substantial evidence supports the IJ's credibility determination, we will not disturb his conclusion that Yan was not entitled to asylum or withholding of removal as to this claim.  See Djadjou, 662 F.3d at 273-75.

B.

Yan also appeals the Board's denial of her petition for asylum and withholding of removal arising from the village

---

[4] Because Yan's application was filed prior to May 11, 2005, the provisions of the REAL ID Act changing this rule regarding credibility determinations do not apply to her application.  See 8 U.S.C. § 1158(b)(1)(B)(iii).  Instead, her case is reviewed under the prior standards.  See Djadjou, 662 F.3d at 274 n.1.

11

chief's nephew's attempts to marry her.  She claims that the events precipitating her leaving China constitute "past persecution" under the INA, and that those events also credibly establish her fear of future persecution in the form of being subjected to forced marriage should she return to China.

Yan challenges more than just the IJ and the Board's dispositive ruling as to this claim.  She also contends that the Virginia IJ erred as a matter of law in ignoring the Board's previous remand of her case for reconsideration in light of Gao, and that her case should be reversed and remanded for the IJ to apply Gao.  We reject Yan's argument because it would require us to ignore two controlling and superseding facts that modified the basis for the Board's remand.  First, the case was originally being considered within the Second Circuit, and the Board remanded for reconsideration in light of then-existing Second Circuit precedent (Gao) that would have been binding on an IJ within the Second Circuit.  Upon transfer to a venue within the Fourth Circuit, Yan's case was no longer governed by Second Circuit precedent.  The transfer thus nullified any binding impact of Gao on Yan's claims.  See, e.g., In re Yanez-Garcia, 23 I. & N. Dec. 390, 399-400 (BIA 2002) (acknowledging that the Board is "bound to follow the Second Circuit's [precedent] in cases arising within that court's jurisdiction,"

12

but would apply a contrary view held by the Board to cases arising "outside the Second Circuit").

Second, and of at least equal importance, the Supreme Court issued an order granting certiorari in Gao, vacating the judgment below, and remanding the case for reconsideration. See Gao, 552 U.S. 801. While Yan quibbles over the basis for the Supreme Court's action, the fact remains that Gao has been vacated. The IJ did not err in determining that these developments altered the basis for the remand, and the Board did not err in agreeing with that assessment.

With respect to the merits of Yan's claim, we hold that substantial evidence supported the Board's conclusion that Yan has not demonstrated that she suffered past persecution. For purposes of the INA,

> [p]ersecution involves the infliction or threat of death, torture, or injury to one's person or freedom, on account of one of the enumerated grounds in the refugee definition. Although the term 'persecution' includes actions less severe than threats to life or freedom, actions must rise above the level of mere harassment to constitute persecution. Persecution is an extreme concept that does not include every sort of treatment that our society regards as offensive.

Li v. Gonzales, 405 F.3d 171, 177 (4th Cir. 2005) (internal quotation marks and citations omitted); see Mirisawo v. Holder, 599 F.3d 391, 396 (4th Cir. 2010) (describing the sort of economic, i.e., non-physical persecution that would satisfy the INA's strictures). Yan's evidence regarding the village chief's

13

nephew's desire to marry her and his behavior after she refused simply does not persuade us that a reasonable fact-finder must conclude that Yan had been "persecuted" within the meaning of the INA. Moreover, a decade has passed since Yan fled China without any indication that the nephew still seeks to force her into a marriage or has taken any action toward her family. Accordingly, having failed to establish past persecution, Yan was not entitled to a presumption of a well-founded fear of future persecution. See Ngarurih, 371 F.3d at 187; see also 8 C.F.R. § 1208.13(b)(1).

Furthermore, because Yan relies on the same insufficient evidence of past persecution to also establish her fear of persecution if returned to China, Yan cannot, as a matter of law, establish that she possesses a well-founded fear of future persecution.[5] An alien whose evidence of past mistreatment does not rise to the level of persecution "cannot prove a well-founded fear of future persecution merely by relying on the past mistreatment. Instead, the alien must prove that she has reason to believe she will be treated worse, i.e., persecuted, upon return to her native country." Li, 405 F.3d at 176-77 (citing

---

[5] That Yan relies on the same evidence to prove both past persecution and fear of future persecution is readily apparent not only from the record and briefing in this case, but also from a concession by Yan's counsel during oral argument.

14

Zalega v. INS, 916 F.2d 1257, 1261 (7th Cir. 1990) (internal citation omitted)). Accordingly, Yan cannot establish eligibility for asylum.[6]

Because the standard for statutory withholding of removal is more stringent than the standard for granting asylum, Yan's failure to establish eligibility for asylum necessarily means she cannot meet the higher standard for withholding of removal. See Camara v. Ashcroft, 378 F.3d 361, 367 (4th Cir. 2004).

---

[6] The Board denied Yan's claim of future persecution on the ground that Yan's particular social group was neither particularized nor socially visible. We are of course mindful that "except in rare circumstances," the Court may not consider issues in an administrative appeal that the agency has not first decided. See Thomas, 547 at 185-87; INS v. Ventura, 537 U.S. 12, 16-17 (2002) (per curiam); see also Lin, 517 F.3d at 694 n.12. On full consideration of the scope of our authority and the relevant precedent, we conclude that this case presents one of those appropriate circumstances in which our decision rests on a clear question of law rather than fact. We are also confident that the Board's decision as to this issue would be "a foregone conclusion" and remand for consideration in the first instance a "mere formality." See Hussain v. Gonzales, 477 F.3d 153, 158 (4th Cir. 2007) ("Because the result of a remand to the Board is a foregone conclusion such that remand would amount to nothing more than a mere formality, we find that the Ventura 'rare circumstances' exception applies."); see also id. at 157-58.

III.

For the foregoing reasons, we deny Yan's petition for review.

PETITION DENIED