PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NELLY IMELDA BOCKOU ESSOHOU,
*Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General of the United States,
*Respondent.*

No. 05-2421

On Petition for Review of an Order of
the Board of Immigration Appeals.
(A96-271-698)

Argued: October 25, 2006

Decided: December 15, 2006

Before KING, GREGORY, and SHEDD, Circuit Judges.

Petition for review granted; vacated and remanded by published opinion. Judge Shedd wrote the opinion, in which Judge King and Judge Gregory concurred.

## COUNSEL

**ARGUED:** Alan Mitchell Parra, Bethesda, Maryland, for Petitioner. Norman Louis Rave, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Environment and Natural Resources Division, Environment Defense Section, Washington, D.C., for Respondent. **ON BRIEF:** Peter D. Keisler, Assistant Attorney General, M. Jocelyn Lopez Wright, Assistant Director, Office of Immigration Litigation,

Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

SHEDD, Circuit Judge:

Nelly Imelda Bockou Essohou, a native and citizen of the Republic of the Congo, entered the United States in October 2001. She was admitted as a nonimmigrant and authorized to remain until late January 2002. In April 2003, the Immigration and Naturalization Service ("INS") served her with a Notice to Appear at removal proceedings.[1] Subsequently, she applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). She conceded removability. An Immigration Judge ("IJ") denied Bockou Essohou's applications, finding that she failed to establish refugee status. Bockou Essohou appealed the IJ's decision to the Board of Immigration Appeals ("Board"), which reversed the IJ's findings on refugee status but dismissed her appeal on alternate grounds. Bockou Essohou now petitions for review of the Board's decision. For the reasons that follow, we grant the petition for review, vacate the Board's decision, and remand this case for further proceedings consistent with this opinion.

I

The Immigration and Nationality Act ("INA") permits the Attorney General to confer asylum on any refugee. 8 U.S.C. § 1158(b). A refugee is an applicant who is unable or unwilling to return to the country of removal "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The applicant bears the burden of making such a showing. *Naizgi v. Gonzales*, 455 F.3d 484, 486 (4th Cir. 2006). However, an applicant who demonstrates that she was the victim of past persecution on the basis

---

[1] The handling of this matter was subsequently transferred to the Department of Homeland Security ("Department").

of a protected ground is presumed to have a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). The Department may rebut this presumption by demonstrating by a preponderance of the evidence either "a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution" or that the applicant could avoid future persecution by internally relocating to another part of the country and it would be reasonably possible to do so. 8 C.F.R. §§ 1208.13(b)(1)(i)(A), (b)(1)(i)(B), (b)(1)(ii).

On appeal, we afford substantial — but not unlimited — deference to the Board's decision regarding an order of removal, applying the narrow standards of review mandated by Congress. *See Ngarurih v. Ashcroft*, 371 F.3d 182, 184 (4th Cir. 2004). Ultimately, we will uphold the Board's decision unless it is "manifestly contrary to law." 8 U.S.C. § 1252(b)(4)(C). In making this determination, we review the Board's factual findings under a substantial evidence standard, affirming the Board unless no reasonable factfinder could agree with the Board's conclusions. *Gandziami-Mickhou v. Gonzales*, 445 F.3d 351, 354 (4th Cir. 2006). Indeed, we must affirm findings of fact unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Likewise, we defer to the Board's credibility findings that are supported by substantial evidence. *Camara v. Ashcroft*, 378 F.3d 361, 367 (4th Cir. 2004).

## II

### A.

In 1997, Bockou Essohou resided in the Republic of the Congo, where she was a member of the Congolese Movement for Democracy and Integral Development ("MCDDI"). As a member of the MCDDI, Bockou Essohou helped organize efforts to educate young people about the party's presidential candidate. Following the outbreak of civil war in 1997, the "Cobras," a paramilitary group aligned with the sitting president and opposed to the MCDDI's presidential candidate, came to Bockou Essohou's home. The Cobras broke down Bockou Essohou's door, searched her home, forcibly removed her from hiding under her bed, and beat and raped her. Eventually, Bockou Essohou lost consciousness. When she awoke, Bockou Essohou was incarcerated and only partially clothed. Bockou Essohou remained in deten-

tion for at least two months, during which time the Cobras continued to abuse her. Significantly, the Cobras questioned Bockou Essohou about her affiliation with the MCDDI, particularly the location of her MCDDI colleagues.

Around August of 1997, Bockou Essohou escaped and began hiding from the Cobras for a period that spanned approximately four years. Initially, she fled to the Democratic Republic of the Congo, where she remained for only a brief time. At one point, Bockou Essohou stayed three days in a refugee camp there, but she left because the conditions were poor and rape was prevalent. Eventually, Bockou Essohou decided to return to the Republic of the Congo. She returned to her village in the Pool region and stayed for two years. Thereafter, Bockou Essohou decided to go to Brazzaville, where her mother lived. Bockou Essohou's mother begged her not to live there because the Cobras were in that area and people had been inquiring about her. Accordingly, Bockou Essohou went to live with a girlfriend in another district.

Bockou Essohou lived undisturbed with the girlfriend for about two months. After two months, the Cobras found out where Bockou Essohou was living. One day, while Bockou Essohou was not at home, the Cobras ransacked the girlfriend's house searching for Bockou Essohou. They threatened to kill the girlfriend if she did not turn Bockou Essohou over to them. When Bockou Essohou came home, the girlfriend arranged for her to live with the girlfriend's parents in the village of Banzandouga.

Once in Banzandouga, Bockou Essohou lived for approximately 20 months without detection by the Cobras. The Cobras eventually came to the village, and Bockou Essohou became fearful that they would find her and kill her. At that time, the girlfriend's parents helped Bockou Essohou procure documentation and leave the country. After leaving the Republic of the Congo, Bockou Essohou resided in France for 20 days before coming to the United States.

## B.

In an oral decision, the IJ denied Bockou Essohou's application for asylum. The IJ reasoned that Bockou Essohou could not demonstrate

past persecution on the basis of a political opinion or any of the other statutory grounds for conferring refugee status. To the contrary, the IJ believed that Bockou Essohou was merely a victim of civil violence. The IJ made no clear adverse credibility finding with regard to most of Bockou Essohou's testimony; however, the IJ found it "suspect" that "someone like" Bockou Essohou would be questioned regarding the location of the MCDDI leader. The IJ found this portion of Bockou Essohou's story unbelievable, absent some independent corroboration. Therefore, the IJ held that Bockou Essohou was not entitled to a presumption of future persecution under 8 C.F.R. § 1208.13(b)(1). The IJ also found that Bockou Essohou had not otherwise carried her burden of demonstrating a well-founded fear of future persecution on the basis of a protected ground.

On appeal, the Board rejected the IJ's finding that Bockou Essohou's past persecution was not on the basis of one of the enumerated protected grounds, concluding that the interrogation about her MCDDI affiliates indicated that her mistreatment was due, at least in part, to her political affiliation. Notwithstanding this determination, the Board found that the Department had rebutted the presumption that Bockou Essohou would be persecuted in the future. Specifically, the Board found that Bockou Essohou "was able to live undisturbed for 20-plus months," which established her ability reasonably to relocate internally. J.A. 3. Throughout its opinion, the Board expressly treated Bockou Essohou's testimony as credible.

III

In her petition for review, Bockou Essohou argues that the Board erred by finding that the Department rebutted the presumption of future persecution. We agree. At the removal hearing, Bockou Essohou testified that the Cobras were sent to Banzandouga to check in the village. In addition, Bockou Essohou described the situation in Banzandouga as "hopeless," and she claimed that the Cobras would have killed her if they had found her. On cross examination, Bockou Essohou further explained her time in Banzandouga, testifying that she had problems with the Cobras when they found out she was in hiding there. Though Bockou Essohou was able to avoid specific problems with the Cobras by fleeing the country, her testimony

reveals her continued, general fear of the Cobras while in the Republic of the Congo.

Given that the Board accepted the credibility of Bockou Essohou's testimony, its ultimate conclusion that she could reasonably relocate internally is not supported by substantial evidence. Reading the record as a whole, we conclude that no reasonable adjudicator could find that Bockou Essohou was undisturbed while in hiding in Banzandouga. To the contrary, the only reasonable reading of Bockou Essohou's testimony reveals a four-year period in which she was in hiding, constantly fearing for her life. Any intermittent period in which Bockou Essohou was not specifically troubled by the Cobras was not due to a reasonable, internal relocation; rather, it was due to her efforts to hide in conjunction with the timing of the Cobras' forays. Accordingly, the Department did not rebut the presumption of future persecution that arose from the Board's finding of past persecution. We hold that the Board's failure to account for this presumption in Bockou Essohou's favor renders its decision to dismiss the appeal manifestly contrary to law.

IV

For the foregoing reasons, we grant Bockou Essohou's petition for review, vacate the Board's decision, and remand for further proceedings consistent with this opinion.[2]

*PETITION FOR REVIEW GRANTED;*
*VACATED AND REMANDED*

---

[2]The Board based its disposition of Bockou Essohou's withholding of removal and CAT claims on substantially the same analysis that controlled its decision regarding her application for asylum. Because we vacate the Board's asylum determination, we need not independently address the withholding of removal and CAT claims.